| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------- x<br>Ralph Berry,                               :<br>                                                    :<br>                Petitioner,             :<br>                                                      :<br>               -against-                :<br>                                                    :<br>United States of America              :<br>                                                    :<br>               Respondent.          :<br>-------------------------------------------------------------- x | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED:  April 5, 2013<br><br>12 Civ. 4900 (PAC)<br>07 Crim. 868 (PAC)<br><br>**OPINION & ORDER** |

HONORABLE PAUL A. CROTTY, United States District Judge:

On June 21, 2012, Petitioner Ralph Berry ("Berry"), proceeding *pro se*, filed a motion, pursuant to 28 U.S.C. § 2255 ("Section 2255"), to vacate, set aside, or correct his sentence based on his assertions that he was denied effective assistance of counsel in both the district and appellate courts. For the reasons stated below, Berry's petition is DENIED.

## BACKGROUND

Berry was initially indicted on one count of "distribut[ing] and possess[ing] with intent to distribute . . . 50 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as 'crack'" on September 21, 2007. (U.S. v. Berry, No. 07 Crim. 868, Dkt. No. 1; see also Dkt. No. 3 (superseding indictment).) On January 25, 2008 and February 20, 2008, the Government filed prior felony informations against Berry, which had the effect of raising the mandatory minimum sentence he faced. (Dkt. Nos. 9, 12.) A second superseding indictment was issued on March 31, 2008, which included two additional counts: engaging in a conspiracy to distribute at least 50 grams of crack cocaine, and distributing and possessing with the intent to distribute at least five grams of crack cocaine on another occasion. (Dkt. No. 17 (the "S2 Indictment").)

Trial was scheduled to commence on Monday, November 10, 2008. The previous Friday, November 7, 2008, the Government and counsel for Berry appeared in court. Berry's attorney reported that Berry was considering pleading guilty if the Government agreed to seek a *nolle prosequi* of one of the prior felony informations, which would lower the mandatory minimum sentence from life imprisonment to twenty years. The Government stated that it would do so if Berry pleaded guilty that afternoon, which would allow it to avoid the expense and burden of preparing for trial and bringing witnesses from out of state to testify the following week. In order to provide Berry with additional time, the Court suggested that a jury be empanelled the following Monday, but that the trial not start until Wednesday.[1] Both parties agreed to this suggestion. In the course of this discussion, the Court stated, with regard to the possibility of Berry pleading guilty, that Berry's counsel "could finally convince Mr. Berry of what was pretty obvious to everybody" and that "Mr. Berry seemed to be resistant to the message of common sense until yesterday's proceeding. And now all of a sudden he's aware of it," given that the potential for a plea agreement "all came together within the last 24 hours." (Nov. 7, 2008 Hr'g Tr. at 8.)

On Monday, November 10, 2008, the Court conducted an allocution pursuant to Fed. R. Crim. P. 11. Berry then pleaded guilty to all three counts of the S2 Indictment, and an order of *nolle prosequi* was entered with respect to the February 20, 2008 prior felony information. (See Dkt. Nos. 34, 37.) Berry was subsequently sentenced to an aggregate term of 252 months imprisonment, to be followed by an aggregate term of ten years supervised release. (Dkt. No. 43.) Berry filed a notice of appeal to the Second Circuit on March 23, 2009. (Dkt. No. 46.) On December 9, 2009, Berry's appellate counsel filed a motion seeking to be relieved, pursuant to

---

[1] Tuesday, November 11, 2008, was a federal holiday.

Anders v. California, 386 U.S. 738 (1967), on the grounds that, upon review of the record, Berry's appellate counsel had concluded that there were no non-frivolous grounds for appeal. His appeal was dismissed by the Second Circuit on August 10, 2010, and the Supreme Court subsequently denied him a writ of certiorari on June 13, 2011.  Berry v. U.S., 131 S.Ct. 3006 (2011).  The instant petition followed soon thereafter.

## DISCUSSION

**I.     Legal Standard**

Section 2255 requires courts to "grant a prompt hearing" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  "To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'"  Puglisi v. U.S., 586 F.3d 209, 213 (2d Cir. 2009) (quoting Armienti v. U.S., 234 F.3d 820, 823 (2d Cir. 2000)).  To determine whether this burden has been met, the Court reviews the materials submitted by the Defendant and relevant portions of the record in the underlying criminal proceeding, "viewing the evidentiary proffers, where credible, and [the] record in the light most favorable to the petitioner." Id.  But where factual assertions "are contradicted by the record in the underlying proceeding," the Court "need not assume the[ir] credibility." Id. at 214.  Furthermore, though "'precedent disapproves of summary dismissal of petitions where factual issues exist[], . . . it permits a middle road of deciding disputed facts on the basis of written submissions.'"  Raysor v. U.S., 647 F.3d 491, 494 (2d Cir. 2011) (quoting Pham v. U.S., 317 F.3d 178, 184 (2d Cir. 2003)).

"[T]o be entitled to relief on a claim of counsel's ineffective assistance, a 'defendant must show that counsel's performance was deficient' and 'that the deficient performance

3

prejudiced the defense.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). This requires "a showing that defense counsel's representation 'fell below an objective standard of reasonableness'" in the face of "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" id. (quoting Strickland, 466 U.S. at 688-89), which "is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.'" Id. (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)). The petitioner must also "demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694). This standard applies to claims of ineffective assistance of both trial and appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

## II. Analysis

### A. *Court's Bias and Impermissible Engagement in Plea Negotiations*

Berry claims that he decided to plead guilty because he "believed that he would not receive a fair trial" as the result of the Court's comments at the November 7, 2008 pre-trial conference. (Pet'r's Br. at 8.) These comments are alleged to have been unduly prejudicial and coercive because "they left defendant with the decision of going to trial in front of a judge who relied on defense counsel to 'finally convince him' to enter a guilty plea, and who believed that defendant's guilt 'was pretty obvious to everybody.'" (Id. at 10 (quoting Hr'g Tr. at 8).)

Fed. R. Crim. P. 11 allows for the parties to reach a plea agreement, but cautions that "[t]he court must not participate in these discussions." "The primary concern that this provision . . . addresses is that a defendant may be coerced into making an involuntary plea if the court . . . were to involve itself in shaping the terms of the plea." Cruz v. U.S., No. 94 Crim. 313, 2000 WL 1510079, at *4 (S.D.N.Y. Oct. 10, 2000). Specifically, the provision's "purpose and

meaning are that the sentencing judge should take no part whatever in any discussion or communication *regarding the sentence to be imposed* prior to the entry of a plea of guilty, or conviction, or submission to him of a plea agreement." U.S. v. Werker, 535 F.2d 198 (2d Cir. 1976) (emphasis added). In the cases cited by Berry, the judges explicitly discussed sentencing prior to the entering of a plea agreement See, e.g., U.S. v. Barrett, 982 F.2d 193, 194 (6th Cir. 1992) ("judge communicated to the defendant that he desired a plea" and that "refusal to accept [his] disposition would be punished" by discussing likelihood of imposing sentence that exceeded sentencing guidelines); U.S. ex rel. Elksnis v. Gilligan, 256 F. Supp. 244, 254 (S.D.N.Y. 1966) (a "guilty plea predicated upon a judge's promise of a definite sentence by its very nature does not qualify as a free and voluntary act"). The Court has made no mention whatsoever of sentencing prior to Berry's decision to plead guilty.[2]

Rather, the record of the pre-trial conference demonstrates that prior to any comments by the Court, Berry's attorney informed the Court that Berry "consent[ed] to proceed with the current plea agreement that is on the table now." (Nov. 10, 2008 Hr'g Tr. at 3-4.) Berry's counsel added that Berry wanted to enter his plea on November 10, 2008, and that he – Berry's counsel – could not "offer the court any logical explanation [for the delay] other than the emotional state of Mr. Berry's mind" and a desire "to speak with his family." (Id. at 4.) The Government explained its position that if Berry was going to plead guilty, he must do so on November 7, 2008, in order to spare the government the burden and expense of flying in witnesses to New York if he decided to proceed as scheduled on November 10, 2008. (Id. at 4,

---

[2] During Berry's allocution, he confirmed that he understood that he would be subject to sentencing "just as if the jury had returned a guilty verdict after a full trial on the merits;" the lengths of the minimum, maximum and guidelines range of sentences; and how they had been calculated. (Nov. 10, 2008 Hr'g Tr. at 6-9.) Berry also stated that he was not signing the plea agreement due to "any promises or threats." (Id. at 10.)

5

7.)  At this point, after Berry's counsel informed the Court that Berry would plead guilty and that "there [was] no defense in this case. . . . He will surely be convicted, and convicted in a very short period of time, at which point this [C]ourt will have no alternative other than to sentence him to life."  (Id. at 5.)  Counsel then asked for more time to allow Berry to plead guilty pursuant to an agreement with a mandatory minimum of 20 years.  (Id. at 5-6.)  The Court suggested a compromise allowing Berry to plead guilty on Monday, November 10, 2008, but still allowing the Government to avoid the expense of bringing out of state witnesses to New York,  (Id. at 7-8.)  At that point, the Court stated that Berry's counsel could convince Berry of "what was pretty obvious to everybody. . . . Mr. Berry seemed to be resistant to the message of common sense until [the November 6, 2008] proceeding.  And now all of a sudden, he's aware of it."  (Id. at 8.)

The Court did not state, much less impose, its views as to the substance of any of the plea agreement's provisions, to which Berry had already indicated his consent at the time of the Court's comments.  To the extent that the Court was involved at all, it was "only in a procedural, supervisory role, and not in any substantive respect," which does not violate Fed. R. Crim. P. 11.  Fama v. U.S., 901 F.2d 1175, 1179 (2d Cir. 1990).

Berry also argues that his counsel's failure to request that the Court recuse itself under 28 U.S.C. § 455[3] is further proof of his counsel's ineffectiveness because the Court's comments evinced personal bias or prejudice.  First, the Court notes that it is unclear why Berry's counsel should have thought a recusal request necessary, given that the criminal proceedings were almost at an end since his client had already agreed to plead guilty.  (See Nov. 7, 2008 Hr'g Tr. at 3-4.)  Further, the Court had just suggested a plan of action which accommodated Berry's request for

---

[3] 28 U.S.C. § 455(b)(1) requires that a judge "disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

more time before entering a plea of guilty. (Id. at 7-8.)  Finally, the terms "bias or prejudice" in 28 U.S.C. § 455 do not refer to "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky v. U.S., 510 U.S. 540, 555 (1994).  The Supreme Court has explained that a judge presiding over a trial or pre-trial proceedings "may . . . be[come] exceedingly ill disposed towards [a party] who has been shown to be a thoroughly reprehensible person.  But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings" and noting that "'[i]mpartiality it not gullibility. Disinterestedness does not mean child-like innocence.'" Id. at 550-51 (quoting In re J.P. Linahan, Inc., 138 F.2d 650, 654 (2d Cir. 1943)).

The Second Circuit recently applied Liteky where a defendant was charged with a bank robbery while under supervised release, leading a district judge to revoke the defendant's supervised release and impose a term of imprisonment for a prior bank robbery conviction. U.S. v. Carlton, 534 F.3d 97, 98-99 (2d Cir. 2008).  At the sentencing hearing regarding the violation of supervised release conditions, the judge stated:

> I will say that I certainly found [that defendant had committed the crimes] by a preponderance [of the evidence].  I, if called upon, would have found beyond a reasonable doubt, and believe a jury would have, . . . that [defendant] was, in fact, guilty of the [subsequent bank robbery].  There was no doubt in my mind as to either a preponderance standard or even on a . . . beyond a reasonable doubt standard.

Id. at 99 n.3. The same judge then presided over the jury trial stemming out of the latter robbery, and denied the defendant's recusal motion. Id.  The Second Circuit found that none of the

judge's statements would cause his "impartiality reasonably to be questioned or 'make fair judgment impossible,'" id. at 100 (quoting Liteky, 510 U.S. at 555), because "'an objective, disinterested observer fully informed of the underlying facts would [not] entertain significant doubt that justice would be done absent recusal.'" Id. (quoting Diamondstone v. Macaluso, 148 F.3d 113, 121 (2d Cir. 1998)).  The same rationale applies here.  Berry's counsel stated that he had "no defense," that "he will surely be convicted," and that Berry had already decided to plead guilty, but needed more time before entering his plea.  (Nov. 7, 2008 Hr'g Tr. at 7-8.)  Finally, the Court was familiar with the matter from having presided over the case for more than one year prior to the hearing.  (See id. at 5.)  In these circumstances, Berry's arguments under Fed. R. Crim. P. 11 and 28 U.S.C. § 455 are meritless.

      B.  *Trial Counsel's Failures Concerning the Plea Agreement*

Berry contends that his counsel was ineffective in advising him to plead guilty because there was an insufficient factual basis for his guilty plea as to Count One of the S2 Indictment, conspiring to distribute narcotics, such that his plea does not satisfy Fed. R. Crim. P. 11(b)(3).  Specifically, Berry argues that while the Government stated that an "agreement" is an essential element of the charged conspiracy, when it offered its proof of the essential elements it did not mention the word "agreement," stating only that Berry had sold crack.  Berry concludes that evidence the Government would have presented at trial would have been insufficient to provide a legal and factual basis for the conspiracy charge.

"Rule 11(b)(3) requires that a court must assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty.  The court may rely on defendant's own admissions, information from the government, or other information appropriate to the specific case." U.S. v. Medrano, No. 12-113-

CR, 2013 WL 440169, at *1 (2d Cir. Feb. 6, 2013) (internal quotation omitted).  At his allocution, while under oath, Berry testified that, "[a]s to [the conspiracy charge] . . . between 1995 and April 2007, I and others agreed to sell more than 50 grams of crack cocaine."  (Nov. 10, 2008 Hr'g Tr. at 14.)  Both the Government and defense counsel agreed that this was sufficient.  (Id. at 14-15.)  While it is true that the Government did not explicitly reference the word "agreement" in stating its proof of the elements of the charged conspiracy, this does not negate Berry's own admissions that he "and others agreed" to sell crack.

Berry now argues that he was reading from a prewritten allocution statement prepared by his counsel, but from which he did not want to read.  His claim is unavailing in light of his sworn statements before this Court and his signing of the November 9, 2008 plea agreement.  (See id. at 2; Gov't's Br. Ex. E.)  "[T]he representations of the defendant . . . constitute a formidable barrier in . . . subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allsion, 431 U.S. 63, 73-74 (1977).  Berry's "subsequent presentation of conclusory allegations unsupported by specifics" is insufficient to call the credibility of his prior sworn statements into question.  Id.

Berry next claims that had counsel not advised him to plead guilty, he would have proceeded to trial because there was an "insufficien[t] . . . factual basis to prove an ongoing 12 year conspiracy."  (Pet'r's Br. at 21.)  In making this argument, Berry must overcome "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  See Strickland, 466 U.S. at 689.  In making this argument, he relies on two contentions, both of which are unavailing.  First, the Jencks Act material put forth by the Government demonstrates that a cooperating witness was prepared to testify that he had conspired with Berry to sell narcotics.  (See Pet'r's Br. Ex. F; Gov't's Br. at 24.)  Second,

9

contrary to Berry's assertions, his intermittent incarceration during the alleged conspiracy does not prove that he was not part of an ongoing criminal conspiracy. See U.S. v. Walker, 142 F.3d 103, 112 (2d Cir. 1998). At most, it would have raised a question of fact to be decided by the jury. U.S. v. Leslie, 658 F.3d 140, 144 (2d Cir. 2011).

Despite Berry's protestations to the contrary, it is far from clear that Berry would have been acquitted had he chosen to proceed to trial. His own counsel concluded that there "was no defense in this case." (Nov. 7 2008 Hr'g Tr. at 5.) Accordingly, advising Berry to enter a plea agreement fits easily "within the wide range of reasonable professional assistance" that competent counsel might offer. Strickland, 466 U.S. at 689. Moreover, Berry and his counsel negotiated a plea agreement that would immunize Berry from further prosecution on the conspiracy charge despite an initial plea agreement that would not have afforded Berry this benefit. Such advocacy can hardly be deemed ineffective. Accordingly, Berry's ineffective assistance of counsel claim is denied.

    C. *Prosecutorial Vindictiveness and Appellate Counsel's Ineffectiveness*

Berry argues that he received ineffective assistance of appellate counsel because his counsel "failed to have [the] superceding [sic] indictment [and prior felony informations] dismissed on the grounds of prosecutorial vindictiveness." (Pet'r's Br. at 16.) He contends that the Government's filing of prior felony informations and the superseding indictment were vindictive because the Government had the information contained in these filings at the time the original indictment was filed and "only enhanced the charges when defendant exercised his constitutional right at the time to proceed to trial where defense counsel made clear . . . that there were no plea deals on the table." (Id. at 13.) If not for this alleged vindictiveness, he claims that he would have proceeded to trial on the original indictment and been acquitted.

10

"Because Petitioner's prosecutorial vindictiveness claim was not raised on direct appeal, it is procedurally barred from collateral review unless Petitioner can establish cause and prejudice or actual innocence." Avendano v. U.S., Nos. 08 Civ. 24549, 02 Cr. 1059, 2009 WL 137035, at *4 (S.D.N.Y. Jan. 21, 2009). Where "Petitioner also argues that he was deprived of the effective assistance of appellate counsel when appellate counsel failed to raise this issue on direct appeal," however, courts may construe "Petitioner's claim of ineffective assistance of appellate counsel as Petitioner's attempt to establish cause for the procedural default of his prosecutorial vindictiveness claim, as well as an independent claim of ineffective assistance." Id.

To succeed on a vindictive prosecution claim, a petitioner must allege the prosecution was "brought in retaliation for [his] exercise of his legal rights." U.S. v. White, 972 F.2d 16, 19 (2d Cir. 1992). "A vindictive motive for a prosecution 'will be found where there is direct evidence of actual vindictiveness, or a rebuttable presumption of a vindictive motive may arise under certain circumstances.'" U.S. v. Koh, 199 F.3d 632, 639 (2d Cir.1999) (quoting White, 972 F.2d at 19). However, "the presumption of prosecutorial vindictiveness generally does not arise in the pretrial setting." Id. at 640. Specifically, there is no presumption of vindictiveness where, as here, the Government filed its prior felony informations and superseding indictment prior to the start of trial. See U.S. v. Lopez, 60 F. App'x. 850, 853-54 (2d Cir. 2003).

Absent a presumption, Berry must offer direct evidence of actual vindictiveness, which requires Berry to show that "'(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) he would not have been prosecuted except for the animus.'" Koh, 199 F.3d at 640 (quoting U.S. v. Aviv, 923 F. Supp. 35, 36 (S.D.N.Y. 1996)). Berry contends that vindictiveness is evidenced by the Government's decision to "only

11

enhance[d] the charges when defendant exercised his constitutional right at the time to proceed to trial." (Pet'r's Br. at 13.)  This conclusory allegation does not rise to the level of direct evidence of animus.  The prosecutor's decision to file the prior felony informations and superseding indictment, without more, may also evidence the sound exercise of prosecutorial discretion.  See U.S. v. Goodwin, 457 U.S. 368, 380 (1982) ("just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.")

Berry's argument that the prosecutor had the relevant information in the S2 Indictment at the time the initial indictment was filed is similarly unavailing.  "To presume that every case is complete at the time an initial charge is filed . . . is to presume that every prosecutor is infallible."  Id. at 382 n.14.  The only direct evidence Berry cites in support of his argument is the prosecutor's statement that the S2 Indictment "was the reason [Berry] was brought over," without explaining the purported significance of this statement.  See Pet'r's Br. at 13.  This does not provide any evidence of animus towards Berry.

Further, there is nothing to suggest the Government acted out of vindictiveness or animus in filing the two prior felony informations.  "The Government has discretion to decide whether to file a prior-felony information, so long as it does not base its decision on an improper factor," a category that does not include the Government's "desire to induce a guilty plea or stipulation."  U.S. v. Barreras, 494 F. App'x 115, 120 (2d Cir. 2012).  Berry provides no direct evidence indicating this prosecutorial decision was motivated by an improper factor, rather than a lawful exercise of statutory authority and prosecutorial discretion.

The Government's appropriate use of prosecutorial discretion in fact afforded Berry some relief.  The Government agreed to a *nolle prosequi* of the second prior felony information, which had the effect of allowing Berry to avoid a mandatory minimum sentence of life imprisonment.  (See Dkt. No. 34.)  Further, the plea agreement stipulates that Berry pled guilty to Counts One, Two, and Three of the S2 Indictment, thereby immunizing Berry from further prosecution on these charges (see Dkt. No. 37), after previously offering a prior agreement which would not have immunized Berry from future prosecution related to the conspiracy charged in Count One.  (See Gov't Br. Ex. D.)  The Government thus lawfully exercised its discretion to both charge Berry, and to provide some degree of leniency.

Finally, even if Berry had offered sufficient direct evidence of prosecutorial animus, he has not proffered any evidence that he would not have been prosecuted in the absence of such animus.  See Koh, 199 F.3d at 640.  Berry therefore failed to overcome the "'presumption of regularity support[ing] [the Government's] prosecutorial decisions.'"  U.S. v. Sanchez, 517 F.3d 651, 671 (2d Cir. 2008) (quoting U.S. v. Armstrong, 517 U.S. 456, 464 (1996)).

For the foregoing reasons, Berry's claimed ineffective assistance of appellate counsel lacks merit because "it was not at all unreasonable for appellate counsel to forego raising [the prosecutorial vindictiveness] argument on appeal."  Avendano, 2009 WL 137035, at *5.  Nor can Berry demonstrate that but for counsel's failure to raise the vindictiveness claim, he would have succeeded on the claim and proceeded to trial.  See Strickland, 466 U.S. at 694.  Berry's claim of ineffective appellate counsel is therefore denied.

## CONCLUSION

For the reasons above, Berry's Section 2255 petition for relief is DENIED. As Berry has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253. The Clerk of Court is directed to enter judgment and terminate this case.

Dated: New York, New York
April 5, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

Copy Mailed By Chambers To:

Ralph Berry
Reg# 60431-054
FCI McKean
P.O. Box 8000
Bradford, PA 16701